# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

        v.                       Case No. 06-CR-142

**DAVID McALISTER,**

        **Defendant.**

## RECOMMENDATION TO THE HONORABLE J.P. STADTMUELLER REGARDING THE DEFENDANT'S MOTION TO SUPPRESS

      On June 13, 2006, the grand jury returned a three count indictment alleging that David McAlister ("McAlister") possessed with intent to distribute more than five grams of crack cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), knowingly carried a firearm in relation to a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i), and illegally possessed a firearm after having been convicted of a felony, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

      On November 24, 2006, the defendant filed a motion to suppress all evidence seized from his person following an encounter with Racine police on May 18, 2006, and McAlister requested an evidentiary hearing. Despite the parties' failure to comply with Criminal L. R. 12.3, as set forth in the court's pretrial order regarding the procedures for requesting an evidentiary hearing, this court conducted an evidentiary hearing on December 14, 2006. A summary of the testimony adduced at the evidentiary hearing is set forth below. A final pretrial is scheduled for January 9, 2007 and a jury trial is scheduled to commence on January 16, 2007 before the Honorable J.P. Stadtmueller.

# EVIDENTIARY HEARING SUMMARY

The government called Police Officer Frank Williams ("Officer Williams") and Police Officer Damen Lowe ("Officer Lowe"), both of the City of Racine Police Department. The defendant called no witnesses.

**Officer Williams**

On May 18, 2006, Officer Williams was on duty as the passenger in an unmarked squad car operated by Officer Lowe. Both Officer Williams and Officer Lowe were in full police uniform and were on a proactive patrol assignment in a high-crime residential neighborhood near downtown Racine when, at approximately 10:26 P.M., dispatch alerted them to a complaint of persons loitering outside of the Latapatia Restaurant, located in the 1900 block of Mead Street. This dispatch did not include a description of the loiterers or refer to a number of persons. Loitering is a frequent problem in that area and is commonly associated with street level drug sales. Officer Williams regularly writes citations for loitering.

The officers arrived at the restaurant approximately four minutes after receiving the dispatch. Upon arrival, Officer Williams saw two black males and two white males outside the restaurant. One of the white males was leaning with his foot up against the wall of the business. Immediately upon the officers' arrival, one of the black males entered the restaurant. There were no other people on the street.

Officer Williams exited the squad car and informed the remaining three individuals that they had received a complaint of loitering and they needed to see everyone's identification. One black male, whom Officer Williams later identified as McAlister, began to walk away, and asked, "For what?" in response to Officer Williams' demand for identification. Officer Williams told McAlister to stop and McAlister refused, instead picking up his pace. Officer Williams again told McAlister to stop. McAlister walked on the sidewalk away from the area of the restaurant, and Officer Williams

walked in the street and paralleled him in an effort to cut off possible escape routes. Throughout this, Officer Lowe was also telling McAlister to stop.

Officer Williams then told McAlister that he was under arrest for obstructing and Officer Williams attempted to grab hold of McAlister's arm. At this point, McAlister had walked approximately thirty to forty feet from his original location. McAlister quickly pulled away, causing Officer Williams to lose his grip on McAlister's arm. In response, McAlister utilized a "vertical stun," which he described as a quickly pushing McAlister against a fence. This was ineffective because the fence gave way and McAlister bounced off the fence.

At this point, Officer Lowe drew his taser and ordered McAlister to the ground. McAlister complied and was handcuffed by Officer Williams. Incident to arrest, McAlister was searched and .44 Magnum handgun was recovered from McAlister's right waistband. Officer Williams proceeded to secure the firearm and determined that there were five or six live rounds in the firearm. Officer Williams continued the search of McAlister and recovered a quantity of crack cocaine and marijuana from McAlister's pocket.

**Officer Lowe**

Officer Lowe was on patrol with Officer Williams when they were dispatched to a complaint regarding a group of unwanted subjects at the Latapatia Restaurant. Officer Lowe understood this dispatch to mean a complaint of loitering. When approximately half a block away, Officer Lowe observed two black males and two white males, including the defendant, outside the restaurant. Based upon what he observed, Officer Lowe felt these individuals were loitering and may have issued a citation based on his observations.

One black male quickly entered the restaurant. Officer Williams approached the group and Officer Lowe went from the drivers' side door, around the back of the car and made contact with

3

McAlister, who was walking away. Officer Lowe asked for McAlister's identification and McAlister responded, "For what? I wasn't doing shit." McAlister then continued to walk away.

Officer Williams walked in the street and attempted to cut off McAlister's escape routes and Officer Lowe followed. Approximately twenty-feet from the door the restaurant, McAlister stopped when Officer Williams attempted to grab hold of his arm. Officer Williams tried to stun McAlister by pushing him into the fence but this was ineffective and McAlister just bounced off. At this point, Officer Lowe drew his taser and warned McAlister that he had three seconds to get on the ground. McAlister complied and was handcuffed by Officer Williams.

A search incident to arrest revealed a loaded .44 caliber handgun. In the coin pocket of McAlister's pants, Officer Lowe recovered plastic baggies that contained crack cocaine and marijuana. After the arrest, the other individuals who had been outside the restaurant were gone. Officer Lowe is unsure what happened to these individuals because his attention was focused upon McAlister once he began walking away.

## ANALYSIS

McAlister argues that the police officers lacked a reasonable suspicion to detain him and his refusal to identify himself did not constitute probable cause to arrest him. Each of these contentions shall be addressed in turn.

**Reasonable Suspicion**

McAlister argues that there was no basis to detain him based upon a telephone complaint to the Racine Police Department of loiterers or "unwanted" persons outside the Latapatia Restaurant. McAlister points out that this dispatch did not refer to the number of alleged loiterers or contain a description of these individuals. Thus, there is no reason to believe that the four individuals that the officers observed were the loiterers.

McAlister's argument is without merit. The officers' initial contact with McAlister constituted a Terry stop. See Terry v. Ohio, 392 U.S. 1 (1968). "[I]t is well-established that a law enforcement officer may 'stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause [to arrest.]" United States v. Sholola, 124 F.3d 803, 812 (7th Cir. 1997) (quoting United States v. Sokolow, 490 U.S. 1 (1989)). Reasonable suspicion is a quantum of proof that is less than probable cause but more than a mere hunch. United States v. Ienco, 182 F.3d 517, 523 (7th Cir. 1999) (citing United States v. Tipton, 3 F.3d 1119, 1122 (7th Cir. 1993); United States v. Quinn, 83 F.3d 917, 921 (7th Cir. 1996)). "In determining whether a particular police-citizen encounter was supported by reasonable suspicion, courts must consider the totality of circumstances known to the officer at the time of the stop." United States v. Quinn, 83 F.3d 917, 921 (7th Cir. 1996) (citing United States v. Cortez, 449 U.S. 411, 417-18 (1981). The totality of the circumstances includes "the experience of the law enforcement agent and the behavior and characteristics of the suspect." United States v. Swift, 220 F.3d 502, 506 (7th Cir. 2000) (quoting United States v. Odum, 72 F.3d 1279, 1284 (7th Cir. 1995)).

The police were responding to a specific complaint of persons loitering outside of the Latapatia Restaurant. The relatively short amount of time between the call and the officers' arrival, the fact that it was relatively late at night and no other persons were on the street, and the fact that these individuals were precisely where the complainant said the loiterers were and engaging in conduct consistent with loitering, all led to the reasonable conclusion that these four persons were the loiterers. Independent of the complaint that the officers were dispatched to investigate, the officers' own observations created reasonable suspicion that the defendant was loitering. Thus, the officers were permitted to detain the individuals in order to investigate their suspicions and the complaint.

**Probable Cause**

As explained above, Officer Lowe testified that he observed McAlister loitering. Although Officer Lowe also testified that he wanted to investigate his observations before deciding to write a citation or make an arrest, the court is provided no information that Officer Lowe would be required to do so. Based upon his observations, he could have chosen to immediately arrest McAlister for the ordinance violation of loitering.

However, both officers testified that they arrested McAlister for the crime of obstructing, rather than the ordinance violation of loitering. Thus, this court shall proceed to analyze whether probable cause existed to arrest McAlister for obstructing.

The crime of resisting or obstructing an officer is defined as: "Whoever knowingly resists or obstructs an officer while such officer is doing any act in an official capacity and with lawful authority, is guilty of a Class A misdemeanor." Wis. Stat. § 946.4. A person violates this statute when "the conduct of the defendant prevents or makes more difficult the performance of the officer's duties." State v. Grobstick, 200 Wis. 2d 242, 249, 546 N.W.2d 187, 190 (Ct. App. 1996). However, a person cannot be arrested for obstruction simply for refusing to identify himself. Henes v. Morrissey, 194 Wis. 2d 338, 354, 533 N.W.2d 802, 808 (1995). "Without more than mere silence, there is no obstruction." Id.

Here, there was more than mere silence; there was flight. The officers had a lawful basis to detain McAlister on suspicion of loitering. His refusal to comply with the officers' lawful command that he stop likely impeded their investigation in that they were forced to neglect the other two individuals and instead focus their attention upon McAlister. The officers were unable to properly investigate the complaint and their observations and therefore were precluded from arresting or citing the other two individuals. Alternatively, given that the officers had a basis to detain

6

Case 2:06-cr-00142-PP   Filed 12/20/06   Page 6 of 7   Document 19

McAlister, his flight made more difficult the officers' official duty of investigating the loitering complaint, and thus established probable cause for McAlister's arrest on for obstructing.

In summary, the evidence adduced at the evidentiary hearing indicates that Officers Williams and Lowe had reasonable suspicion to detain McAlister outside the Latapatia Restaurant. When the officers attempted to detain McAlister, he walked away and repeatedly refused to comply with their lawful orders that he stop. By doing so, he made the officers' investigation more difficult and thus there was probable cause to believe that he engaged in the crime of obstructing. Therefore, there was probable cause to arrest McAlister and McAlister was lawfully searched incident to his arrest.

**IT IS THEREFORE RECOMMENDED** that the defendant's motion to suppress be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Criminal Procedure 59 (b)(2), and General Local Rule 72.3 (E.D. Wis.); whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

Dated at Milwaukee, Wisconsin this <u>19th</u> day of December, 2006.

<u>s/AARON E. GOODSTEIN</u><br>
U.S. Magistrate Judge

7
Case 2:06-cr-00142-PP   Filed 12/20/06   Page 7 of 7   Document 19