UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                                      Case No. 06-CR-142

DAVID McALISTER,

      Defendant.

_____

**ORDER**

On June 13, 2006, a grand jury sitting in this district returned a three-count indictment charging the defendant, David McAlister ("McAlister"), with drug and firearm offenses in violation of 21 U.S.C. § 841, 18 U.S.C. §§ 922 & 924. On November 24, 2006, McAlister filed a motion to suppress all evidence seized from his person during a May 18, 2006 encounter with the Racine police. On December 19, 2006, Magistrate Judge Aaron E. Goodstein issued a recommendation that McAlister's motion be denied. On December 29, 2006, McAlister filed a timely objection to Magistrate Goodstein's recommendation. The government responded to McAlister's objection on January 5, 2007. For the reasons set forth below, the court will deny McAlister's motion and objection and adopt the recommendation of Magistrate Goodstein.

## BACKGROUND

The following facts are quoted entirely from Magistrate Goodstein's summary of the evidentiary hearing:

> The government called Police Officer Frank Williams ("Officer Williams") and Police Officer Damen Lowe ("Officer Lowe"), both of the City of Racine Police Department. The defendant called no witnesses.
>
> **Officer Williams**
>
> On May 18, 2006, Officer Williams was on duty as the passenger in an unmarked squad car operated by Officer Lowe. Both Officer Williams and Officer Lowe were in full police uniform and were on a proactive patrol assignment in a high-crime residential neighborhood near downtown Racine when, at approximately 10:26 P.M., dispatch alerted them to a complaint of persons loitering outside of the Latapatia Restaurant, located in the 1900 block of Mead Street. This dispatch did not include a description of the loiterers or refer to a number of persons. Loitering is a frequent problem in that area and is commonly associated with street level drug sales. Officer Williams regularly writes citations for loitering.
>
> The officers arrived at the restaurant approximately four minutes after receiving the dispatch. Upon arrival, Officer Williams saw two black males and two white males outside the restaurant. One of the white males was leaning with his foot up against the wall of the business. Immediately upon the officers' arrival, one of the black males entered the restaurant. There were no other people on the street.
>
> Officer Williams exited the squad car and informed the remaining three individuals that they had received a complaint of loitering and they needed to see everyone's identification. One black male, whom Officer Williams later identified as McAlister, began to walk away, and asked, "For what?" in response to Officer Williams' demand for identification. Officer Williams told McAlister to stop and McAlister refused, instead picking up his pace. Officer Williams again told McAlister to stop. McAlister walked on the sidewalk away from the area of the restaurant, and Officer Williams walked in the street and paralleled him in an effort to cut off possible escape routes. Throughout this, Officer Lowe was also telling McAlister to stop.
>
> Officer Williams then told McAlister that he was under arrest for obstructing and Officer Williams attempted to grab hold of McAlister's arm. At this point, McAlister had walked approximately thirty to forty feet

from his original location. McAlister quickly pulled away, causing Officer Williams to lose his grip on McAlister's arm. In response, McAlister utilized a "vertical stun," which he described as a quickly pushing McAlister against a fence. This was ineffective because the fence gave way and McAlister bounced off the fence.

At this point, Officer Lowe drew his taser and ordered McAlister to the ground. McAlister complied and was handcuffed by Officer Williams. Incident to arrest, McAlister was searched and .44 Magnum handgun was recovered from McAlister's right waistband. Officer Williams proceeded to secure the firearm and determined that there were five or six live rounds in the firearm. Officer Williams continued the search of McAlister and recovered a quantity of crack cocaine and marijuana from McAlister's pocket.

**Officer Lowe**

Officer Lowe was on patrol with Officer Williams when they were dispatched to a complaint regarding a group of unwanted subjects at the Latapatia Restaurant. Officer Lowe understood this dispatch to mean a complaint of loitering. When approximately half a block away, Officer Lowe observed two black males and two white males, including the defendant, outside the restaurant. Based upon what he observed, Officer Lowe felt these individuals were loitering and may have issued a citation based on his observations.

One black male quickly entered the restaurant. Officer Williams approached the group and Officer Lowe went from the drivers' side door, around the back of the car and made contact with McAlister, who was walking away. Officer Lowe asked for McAlister's identification and McAlister responded, "For what? I wasn't doing shit." McAlister then continued to walk away.

Officer Williams walked in the street and attempted to cut off McAlister's escape routes and Officer Lowe followed. Approximately twenty-feet from the door [of] the restaurant, McAlister stopped when Officer Williams attempted to grab hold of his arm. Officer Williams tried to stun McAlister by pushing him into the fence but this was ineffective and McAlister just bounced off. At this point, Officer Lowe drew his taser and warned McAlister that he had three seconds to get on the ground. McAlister complied and was handcuffed by Officer Williams.

A search incident to arrest revealed a loaded .44 caliber handgun. In the coin pocket of McAlister's pants, Officer Lowe recovered plastic baggies that contained crack cocaine and marijuana. After the arrest, the other individuals who had been outside the restaurant were gone. Officer Lowe is unsure what happened to these

-3-

> individuals because his attention was focused upon McAlister once he began walking away.

(December 20, 2006 Recommendation 2-4.)

## ANALYSIS

McAlister's first objection to the recommendation relates primarily to his argument that the arresting officers lacked the requisite reasonable suspicion to conduct the initial *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1 (1968). McAlister argues that there was no reasonable suspicion because (1) it was not apparent that any loitering law had been violated; (2) the complainant did not sufficiently describe any of the activity of the alleged "loiterers"; and (3) the caller did not sufficiently describe the loiterers such that the officers could have identified McAlister. McAlister's arguments find no support in the factual findings made by Magistrate Goodstein and, therefore, are without merit.

As Magistrate Goodstein found, there was certainly reasonable suspicion for the officers' initial encounter with McAlister. Pursuant to *Terry v. Ohio*, a police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity is taking place. *See Terry*, 392 U.S. at 21-22; *see also United States v. Ienco*, 182 F. 3d 517, 523 (7th Cir. 1999). Reasonable suspicion constitutes something less than probable cause, but something more than a "mere hunch." *Ienco,* 182 F.3d at 532. In evaluating reasonable suspicion, the court must consider the totality of circumstances

-4-

and facts available to the officer at the time of the stop. *Id.* Additionally, when a court evaluates an investigative stop such as the one in this case, the court looks to whether or not the stop was justified, and whether or not it was reasonably related to the "'in scope to the circumstances which justified the interference in the first place.'" *Id.* (quoting *United States v. Smith*, 3 F.3d 1088, 1095 (7th Cir.1993)).

McAlister argues in his objection that there was no reasonable suspicion to detain him for an investigative stop because "it is not against the law (and not even contrary to the Racine loitering ordinance) for a person to be merely standing on the public sidewalk in front of a restaurant." (McAlister's Obj., December 29, 2006.) However, the caller alerted the officers that certain loiterers were outside of a specific restaurant, and additionally, the officers testified that the neighborhood was a high-crime neighborhood in Racine, and loitering was a frequent problem in that specific area. McAlister also argues that the caller did not properly identify the loiterers, but as noted in the summary of the evidentiary hearing, there was a short time between the call and the officers' arrival on the scene; furthermore, there were only four individuals at the restaurant when the officers arrived thereby making the likelihood quite high that the call was in reference to those individuals.

Therefore, despite McAlister's arguments to the contrary, a review of the officers' testimonies establishes that, in viewing the totality of the circumstances, there was clearly reasonable suspicion for the officers to conduct the initial *Terry* stop. Several factors lead to a finding of reasonable suspicion: (1) the officers were

-5-

responding to a specific telephone call that a group of loiterers was in front of the Latapatia Restaurant in Racine, Wisconsin; (2) the time between the complainant's phone call and the officers' arrival at the scene was an extremely short period of time; and as stated above, (3) both officers testified that there were only four individuals at the scene when they arrived, thereby making the likelihood relatively high that the complainant was calling about these individuals.

McAlister also objects to the magistrate's finding that probable cause existed. As previously noted, McAlister's arrest was for the crime of obstructing, rather than for a violation of the Racine loitering ordinance. An individual has violated Wisconsin's obstructing law when he "knowingly resists or obstructs an officer while such officer is doing any act in an official capacity and with lawful authority." Wis. Stat. § 946.4 (2007). This statute has been violated when "the conduct of the defendant prevents or makes more difficult the performance of the officer's duties." *State v. Grobstick*, 546 N.W. 2d 187, 190 (Wis. 1996).

Here, McAlister's conduct clearly satisfied the elements of the Wisconsin obstruction statute. Both officers testified that upon requesting McAlister's identification, he refused to comply and began walking away, despite the consistent objections of the officers. After McAlister continued to flee and be uncooperative with the officers, Officer Williams informed McAlister that he was under arrest for obstruction. Officer Williams attempted to grab hold of McAlister's arm, but McAlister quickly pulled away and out of Officer Williams' grasp. At this point, Officer Lowe

-6-

assisted Officer Williams in effectuating the arrest by drawing his taser while Officer Lowe handcuffed McAlister. Subsequently, a search incident to this arrest was conducted.

To effectuate a legal arrest, an officer must have probable cause. "Probable cause exists if, at the time of arrest, the officers possess knowledge from reasonably trustworthy information that is sufficient to warrant a prudent person in believing that a suspect has committed, or is committing, a crime." *United States v. Brown*, 366 F.3d 456 (7th Cir. 2004)(citing *United States v. Schaafsma*, 318 F.3d 718, 722 (7th Cir.2003)). Here, the officers testified that they personally observed McAlister attempting to obstruct as defined by the Wisconsin Statute. This clearly forms the basis for the requisite probable cause, and the arrest and search were therefore lawful.

McAlister's objection to the reasonable suspicion for the initial stop and the probable cause for the arrest following the stop are contrary to the testimony of Officers Williams and Lowe and also the factual findings of Magistrate Goodstein. The court finds McAlister's objections without merit and is constrained to deny his motion to suppress and hereby adopts the magistrate's recommendation. Accordingly,

**IT IS ORDERED** that David McAlister's motion to suppress [Docket # 12] be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Magistrate Judge Aaron E. Goodstein's Report and Recommendation [Docket # 19] be and the same is hereby **ADOPTED**.

Dated at Milwaukee, Wisconsin this  10th   day of January, 2007.

                                          BY THE COURT:

                                          s/ J. P. Stadtmueller
                                         J. P. Stadtmueller
                                         U.S. District Judge